# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| )<br>NORA ALI MOBAREZ, *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>JOHN KERRY, Secretary, United States )<br>Department of State, in his official )<br>capacity, )<br>)<br>and )<br>)<br>ASHTON CARTER, Secretary, United )<br>States Department of Defense, in his )<br>official capacity, )<br>)<br>Defendants. )<br>) | Civil Action No. 15–cv-516 (KBJ) |

## <u>MEMORANDUM OPINION</u>

Plaintiff Nora Ali Mobarez, a United States citizen, is currently residing in the war-torn and conflict-ridden Republic of Yemen. (*See* Compl., ECF No. 2, ¶¶ 4, 55–59.) Mobarez has joined with 25 other people, all of whom are U.S. citizens or permanent residents with Yemeni connections, to file the instant official-capacity complaint against the Secretary of the Department of State ("State") and the Secretary of the Department of Defense ("DOD" and, collectively, "Defendants"). These plaintiffs seek a court order to compel Defendants to comply with an alleged duty of the Executive Branch to provide a means of evacuation from Yemen for them or their relatives. (*See id.* ¶¶ 3–24, 29–77.) Specifically, their complaint asserts that the United

States has closed its embassy in Sana'a, Yemen, has evacuated embassy staff, and has removed Marines from the country, but that the U.S. government has yet to execute any plan to secure the safe removal of private American citizens.  (*See id.* ¶¶ 34–36, 77.) According to Plaintiffs, Defendants' forbearance violates the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–06, insofar as Defendants "have failed to provide through direct military assistance or contracting with commercial entities the necessary equipment, ships, airplanes, and other items that are available to Defendants to [e]nsure the security, safety, and well-being of United States citizens[,]" and have therefore "unlawfully withheld and/or unreasonably delayed agency action to which the Plaintiffs are entitled" and/or "have taken action that is arbitrary and capricious and an abuse of discretion and not in accordance with law[.]"  (*Id.* ¶ 81.)

Before this Court at present is Defendants' Motion to Dismiss the instant complaint.  (*See* Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF No. 8.)  Defendants contend that Plaintiffs are wrong about the existence of any duty to evacuate them. (*See* Defs.' Reply in Supp. of Defs.' Mot. ("Reply"), ECF No. 12, at 6–8.)[1] Furthermore, as a threshold matter, Defendants insist that legal claims such as the ones Plaintiffs bring here require the judiciary to second-guess the discretionary foreign-policy decisions of the Executive Branch, and thus, are nonjusticiable under the political-question doctrine.  (*See* Defs.' Mem. in Supp. of Defs.' Mot. ("Defs.' Mem."), ECF No. 8-1, at 12–14.)

On March 31, 2016, this Court issued an order **GRANTING** Defendants' Motion to Dismiss Plaintiffs' complaint.  (*See* Order, ECF No. 13.)  The instant Memorandum

---

[1] Page-number citations to the documents the parties have filed refer to the page numbers that the Court's electronic filing system automatically assigns.

Opinion explains the Court's reasons for that order.  In short, the Court agrees with Defendants' justiciability argument, and has therefore concluded that it lacks jurisdiction to entertain Plaintiffs' complaint.

## I.   BACKGROUND

### A.   Factual Allegations

Plaintiffs make several alarming allegations regarding the state of civil unrest in Yemen and Defendants' alleged failure to provide for the evacuation of American citizens and residents.  For example, according to the complaint, an "ongoing conflict" in Yemen has led to widespread chaos and danger for the inhabitants of that country (Compl. ¶¶ 29, 39–51), and "United States citizens are being subjected to trauma, both physical and mental [, given that] many have witnessed fellow family members or relatives being killed or seriously injured" (*id*. ¶ 64).  In addition, Plaintiffs assert that the United States government "had notice and/or knowledge of the imminent military action, armed conflict, and civil war in Yemen" as of January 2015, and that it has not only evacuated its embassy staff, it also required the U.S. ambassador and Marines to leave the country by February 11, 2015.  (*Id*. ¶¶ 32–37.)  Plaintiffs contend that the violence in Yemen—which allegedly has included a suicide bombing at a mosque that killed 137 people on March 20, 2015 (*see id*. ¶ 38)—escalated to a full-on war in late March of 2015, when ten separate countries "conducted air strikes" in that country (*id*. ¶ 39).  And circumstances have only worsened over time; according to Plaintiffs, the United Nations and World Health Organization reported over 500 deaths between the conflict's escalation in late March of 2015 and April 6, 2015.  (*See id*. ¶¶ 48, 51.)

Most importantly for present purposes, Plaintiffs say that the U.S. government has already publicly acknowledged the danger to U.S. citizens in Yemen.  On the same day the embassy staff left that country, the Department of State allegedly "issued a travel warning on the Department of State website" (*id.* ¶ 37); however, according to Plaintiffs, that same statement also specifically asserted that the United States government has "no plans to evacuate United States citizens from Yemen" (*id.*). Indeed, Plaintiffs allege that, notwithstanding the grave danger to American citizens, State and DOD have "not provided any evacuation efforts to non-Embassy staff and/or United States Citizens in Yemen."  (*Id.* ¶ 52.)  And Plaintiffs maintain that no such efforts are forthcoming: although a Pentagon spokesperson has purportedly remarked "that the United States has 'assets in place' to evacuate Americans" (*id.* ¶ 72 (citation omitted)), a State Department spokeswoman has also addressed the matter, and, according to Plaintiffs, has stated unequivocally that there are "'no plans for U.S. assets to be used' for evacuations" (*id.* ¶ 77 (citation omitted)).

### B.    Procedural History

On April 9, 2015, Plaintiffs filed the instant two-count complaint in this Court. Count One asserts that Defendants violated the APA by "fail[ing] to provide through direct military assistance or contracting with commercial entities the necessary equipment, ships, airplanes, and other items that are available to Defendants to [e]nsure the security, safety, and well-being of United States citizens."  (*Id.* ¶ 81.)  This failure, Plaintiffs charge, has "unlawfully deprived" them "of a swift, accommodating, and reasonable evacuation from Yemen."  (*Id.* ¶ 82.)  Count Two, which essentially

duplicates Count One, is entitled "Injunctive Relief" and states that "Defendants must be compelled to evacuate United State[s] Citizens in Yemen." (*Id.* ¶ 93.)[2]

On June 15, 2015, Defendants filed their motion to dismiss Plaintiffs' complaint. (*See generally* Defs.' Mot.)  In the motion, Defendants assert two independent grounds for dismissal: (1) that Plaintiffs' claims are nonjusticiable under the political-question doctrine; and (2) that, even if the claims can be decided by a federal court, Plaintiffs fail to state a claim under the APA because the only potentially applicable statutory and administrative provisions commit the evacuation decision to agency discretion, and in any event, there is no final agency action.  (*See* Defs.' Mem. at 12–22.)  In their opposition brief, Plaintiffs respond that the Executive Branch does, in fact, have a non-discretionary statutory and regulatory duty to evacuate American citizens in harm's way such that the political-question doctrine is inapplicable.  (*See* Pls.' Opp'n to Defs.' Mot. ("Pls.' Opp'n"), ECF No. 11, at 4–7, 13–14.)

Defendants' motion to dismiss became ripe for decision on September 18, 2015, after Defendants filed their reply (*see generally* Reply); and, as mentioned, this Court granted the motion on March 31, 2016.

---

[2] Because injunctive relief is a remedy and not a separate cause of action, *see Base One Techs., Inc. v. Ali*, 78 F. Supp. 3d 186, 199 (D.D.C. 2015), Plaintiffs' two-count complaint actually contains only one legal claim: that Defendants' failure to execute an evacuation violates the APA.  Furthermore, although the complaint quotes multiple parts of 5 U.S.C. § 706—and thereby suggests that Plaintiffs are invoking distinct bases for the alleged APA violation (*see* Compl. ¶ 81)—it is clear to this Court that the gravamen of Plaintiffs' APA claim is their repeated contention that State and DOD's refusal to utilize their considerable resources to evacuate private American citizens from Yemen under the circumstances described is arbitrary and capricious and amounts to an abuse of discretion.  (*See, e.g.*, *id.* ¶ 92 ("The Defendants' failure to evacuate and secure the safety of United States Citizens in Yemen is arbitrary and capricious."); *id.* at 23 ("The Defendants' inaction in not evacuating United States citizens from Yemen was arbitrary and capricious, and violated the Administrative Procedure Act.").)

## II.    MOTIONS TO DISMISS UNDER RULE 12

The D.C. Circuit has consistently treated the political-question doctrine as bearing on subject-matter jurisdiction.  *See Hourani v. Mirtchev*, 796 F.3d 1, 8 (D.C. Cir. 2015); *Lin v. United States*, 561 F.3d 502, 504 (D.C. Cir. 2009).  Thus, although Defendants here have invoked Federal Rule of Civil Procedure 12 generally (without specifying a subsection) in support of their motion to dismiss, this Court construes Defendants' political-question arguments as proceeding under Rule 12(b)(1).

When a motion to dismiss a complaint under Rule 12(b)(1) is filed, a federal court is required to ensure that it has "the 'statutory or constitutional power to adjudicate [the] case[.]'"  *Morrow v. United States*, 723 F. Supp. 2d 71, 77 (D.D.C. 2010) (emphasis omitted) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998)).  As always, the burden of showing that subject-matter jurisdiction exists is borne by the plaintiff.  *See Delta Air Lines, Inc. v. Export-Import Bank of U.S.*, 85 F. Supp. 3d 250, 259 (D.D.C. 2015) (citing, *inter alia*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).  And if subject-matter jurisdiction is lacking, the court "must dismiss the complaint in its entirety."  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (citation omitted).  Notably, in evaluating whether or not there is subject-matter jurisdiction with respect to a plaintiff's case, the court will "treat the complaint's factual allegations as true" and afford the plaintiff "the benefit of all inferences that can be derived from the facts alleged."  *Delta Air Lines,* 85 F. Supp. 3d at 259 (internal quotation marks and citation omitted).  However, those factual allegations receive "closer scrutiny" than they would in the Rule 12(b)(6) context.  *Id.* (internal quotation marks and citations omitted).  Moreover, when necessary, a court resolving a Rule

6

12(b)(1) motion "may consider materials outside the pleadings[.]" *Id.* (internal quotation marks and citations omitted).

Because Defendants here have also asserted that the complaint should be dismissed on the grounds that Plaintiffs fail to state a claim under the APA, the pending motion to dismiss also implicates Rule 12(b)(6).  *See* Fed. R. Civ. P. 12(b)(6).  A motion under that rule demands that the court look only at the allegations of the complaint to determine whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Harris v. Dist. of Columbia Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015) (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "But the tenet that a court must accept as true all of the [factual] allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678).  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (alteration in original) (internal quotation marks and citation omitted).  And unlike Rule 12(b)(1), Rule 12(b)(6) "places th[e] burden on the moving party" to show that the complaint is legally insufficient. *Cohen v. Bd. of Trs. of the Univ. of the Dist. of Columbia*, No. 15-7005, 2016 WL 1612810, *3 (D.C. Cir. Apr. 22, 2016) (citing 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2015)).

## III.   ANALYSIS

Plaintiffs have asked this Court, in no uncertain terms, to issue an order that compels the Executive Branch to conduct an evacuation of American citizens in Yemen. Not surprisingly, Defendants insist that any such order would impermissibly encroach

upon the discretion that the Constitution affords to the political branches to conduct foreign affairs; therefore, prior to considering Defendants' contention that Plaintiffs' complaint fails to state a claim under the APA, this Court must first determine whether or not it has the authority to traverse the thicket of thorny foreign-policy issues that encompasses Plaintiffs' allegations.  Precedent in this area makes it crystal clear that federal courts cannot answer "political questions" that are presented to them in the guise of legal issues, *see infra* Part III.A., but identifying *which* claims qualify as nonjusticiable political questions—and which do not—can sometimes be a substantially less lucid endeavor.  Not so here: as explained below, after considering the parties' arguments and the applicable law regarding the boundaries of the political-question doctrine, this Court is confident that Plaintiffs' claims fit well within the scope of the nonjusticiability principles that the Supreme Court and D.C. Circuit have long articulated.  Accordingly, in its Order of March 31, 2016, the Court granted Defendants' motion and dismissed Plaintiffs' case.

> **A.     The Political-Question Doctrine**

The political-question doctrine is, in essence, "a function of the separation of powers," insofar as it recognizes that "some [q]uestions, in their nature political, are beyond the power of the courts to resolve[.]"  *El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 840 (D.C. Cir. 2010) (en banc) (first alteration in original) (internal quotation marks and citations omitted).  The Supreme Court has said that the doctrine aims "to restrain the Judiciary from inappropriate interference in the business of the other branches of Government[.]"  *United States v. Munoz-Flores*, 495 U.S. 385, 394 (1990).  As such, it "excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for

resolution to the halls of Congress or the confines of the Executive Branch[.]" *El-Shifa*, 607 F.3d at 840 (internal quotation marks and citations omitted).

That said, it is important to note that the political-question doctrine is "a narrow exception" to the rule that "the Judiciary has a responsibility to decide cases properly before it," *Zivotofsky v. Clinton*, 132 S. Ct. 1421, 1427 (2012) (citations omitted); moreover, the doctrine is also "notorious for its imprecision," *Harbury v. Hayden*, 522 F.3d 413, 418 (D.C. Cir. 2008). This means that courts have often struggled to ascertain whether, and under what circumstances, claims in a plaintiff's complaint raise nonjusticiable political issues.

Fortunately, some guideposts do exist. The D.C. Circuit has announced that a court identifies a nonjusticiable political question by "[c]onducting [a] discriminating analysis of the particular question posed by the claims the plaintiffs press[.]" *El Shifa*, 607 F.3d at 844 (internal quotation marks and citation omitted); *see also id*. at 842 ("[T]he presence of a political question in these cases turns not on the nature of the government conduct under review but more precisely on the question the plaintiff raises about the challenged action." (citation omitted)). This probing analysis of a plaintiff's claims historically has centered on ascertaining whether any one of the several factors that the Supreme Court first laid out in *Baker v. Carr*, 369 U.S. 186 (1962), are present. *See El Shifa*, 607 F.3d at 841. Under settled Supreme Court precedent,

> a claim presents a political question if it involves: [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual

need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Id.* (internal quotation marks omitted) (quoting *Baker*, 369 U.S. at 217); *see also Simon v. Republic of Hungary*, 812 F.3d 127, 149–50 (D.C. Cir. 2016). Notably, these factors are disjunctive, and when any one of them is "[p]rominent on the surface" of a case, the case involves a nonjusticiable political question and the court cannot proceed. *Baker*, 369 U.S. at 217.

Given these touchstones, it is easy to see why "[d]isputes involving foreign relations" often raise nonjusticiable political questions. *El-Shifa*, 607 F.3d at 841 (noting that claims regarding foreign-policy matters "raise issues that frequently turn on standards that defy judicial application or involve the exercise of a discretion demonstrably committed to the executive or legislature" (internal quotation marks and citation omitted)). Indeed, the President has "'plenary and exclusive power' in the international arena" and acts "'as the sole organ of the federal government in the field of international relations[,]'" *Schneider v. Kissinger*, 412 F.3d 190, 195 (D.C. Cir. 2005) (quoting *United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 320 (1936)); consequently, courts have found that controversies that are "intimately related to foreign policy" are "rarely proper subjects for judicial intervention," *El-Shifa*, 607 F.3d at 841 (internal quotation marks and citation omitted).

But there is no per se 'foreign policy' rule—*i.e.*, a claim is not nonjusticiable simply and solely because it "implicates foreign relations." *Id.* (citation omitted). And drawing the line between nonjusticiable and justiciable claims, at least in foreign-relations cases, involves identifying those claims that require the court to opine on the

"wisdom of discretionary decisions made by the political branches in the realm of foreign policy[,]" as distinguished from claims that "[p]resent[] purely legal issues such as whether the government had legal authority to act." *Id.* at 842 (second alteration in original) (internal quotation marks and citation omitted).  That is, if "[t]he federal courts are not being asked to supplant a foreign policy decision of the political branches with the courts' own unmoored determination" and, instead, are merely tasked with the "familiar judicial exercise" of determining how a statute should be interpreted or whether it is constitutional, the claim does not involve answering a political question and is justiciable.  *Zivotofsky*, 132 S. Ct. at 1427; *see also Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 229–30 (1986) (explaining that not "every case or controversy which touches foreign relations lies beyond judicial cognizance[,]" and emphasizing that courts "have the authority to construe treaties[,] . . . executive agreements, and . . . congressional legislation" and to address other "purely legal question[s] of statutory interpretation" in the foreign-policy realm (internal quotation marks and citation omitted)).  However, if the court is being called upon to serve as "a forum for reconsidering the wisdom of discretionary decisions made by the political branches in the realm of foreign policy or national security[,]" then the political-question doctrine is implicated, and the court cannot proceed.  *El-Shifa*, 607 F.3d at 842.

In this regard, then, *El-Shifa*'s dichotomy between claims presenting purely legal questions, on the one hand, and claims requiring the reconsideration of discretionary foreign-policy decisions, on the other, helpfully directs a court's attention to its own role in determining the issue presented when deciding a case with foreign-policy

implications.  When deciding the claim merely requires the court to engage in garden-variety statutory analysis and constitutional reasoning, it has authority to do so (*i.e.*, the claim is justiciable), but a claim that goes beyond those classically judicial functions to request that a court override discretionary foreign-policy decisions that the political branches have made—however framed—falls within the heartland of the political-question doctrine.  *See Ali Jaber v. United States*, No. 15-0840, 2016 WL 706183, at *4 (D.D.C. Feb. 22, 2016) ("If plaintiffs' claims, '*regardless of how they are styled*, call into question the prudence of the political branches in matters of foreign policy or national security,' then they must be dismissed." (emphasis in original) (quoting *El-Shifa*, 607 F.3d at 841)).  In other words, the political-question doctrine demands that a court assiduously avoid "assess[ing] the merits of the President's [discretionary] decision[s]" regarding foreign-policy matters, *El Shifa*, 607 F.3d at 844, by "declin[ing] to adjudicate claims seeking only a 'determination[] whether the alleged conduct *should* have occurred[,]'" *id.* at 842 (second alteration in original) (emphasis in original) (quoting *Harbury*, 522 F.3d at 420).

> **B.    Plaintiffs' Claims Require This Court To Determine Whether The Executive Branch Should Have Decided To Conduct Complex Overseas Operations, Which Is A Quintessential Political Question**

Plaintiffs' APA claims—as elucidated in the complaint—rest fundamentally on the contention that the failure of State and DOD to provide "a swift, accommodating, and reasonable evacuation from Yemen" (Compl.  ¶ 82) constitutes agency action that is "arbitrary[,] capricious[,] an abuse of discretion[, or otherwise] not in accordance with law[,]" in violation of the APA.  (*Id.*  ¶ 81 (citing 5 U.S.C. § 706); *see also id*. ¶¶ 82–92.)  It is clear to this Court that this claim fits squarely within the recognized standards for identifying nonjusticiable political questions described above, for several reasons.

First of all, Plaintiffs' APA claim involves "a textually demonstrable constitutional commitment of the issue to a coordinate political department[,]" *El-Shifa*, 607 F.3d at 841 (internal quotation marks and citation omitted)—which is the first *Baker* factor, and a hallmark of political questions.  It cannot be seriously disputed that "decision-making in the fields of foreign policy and national security is textually committed to the political branches of government."  *Schneider*, 412 F.3d at 194; *see also id.* at 194–95 (collecting the various explicit "[d]irect allocation[s]" in the Constitution of those responsibilities to the legislative and executive branches).  And, indeed, Plaintiffs seek to have this Court question the Executive Branch's discretionary decision to refrain from using military force to implement an evacuation under the circumstances described in the complaint, despite the fact that, per the Constitution, it is the President who, as head of the Executive Branch and "Commander in Chief[,]" U.S. Const. Art. II, § 2, decides whether and when to deploy military forces, not this Court.  *See El-Shifa*, 607 F.3d at 842 (explaining that a claim "requiring [the court] to decide whether taking military action was wise" is a nonjusticiable "policy choice[] and value determination[]" (second and third alterations in original) (internal quotation marks and citation omitted)).

Plaintiffs' suggestion that the court-ordered remedy they seek could very well stop short of a direct mandate for military intervention (*see* Pls.' Opp'n at 15 (asserting that "[t]his Court can order Defendants to [effectuate the evacuation] by simply directing the evacuation to happen and leaving it to Defendants to determine the means")) makes no difference, as far as the political-question doctrine is concerned. Regardless, the clear basis for the complaint's assertion that Plaintiffs are entitled to

any relief at all is the contention that the Executive Branch has abused its discretion—in APA terms—in refusing to evacuate U.S. citizens from Yemen thus far (*see, e.g.*, Compl. ¶ 81), and the Court's evaluation of *that* contention would necessarily involve second-guessing the "wisdom" of these agencies' discretionary determinations. *El-Shifa*, 607 F.3d at 842; *see also Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (explaining that, per the reasoned-decisionmaking requirement embedded in the APA's "arbitrary and capricious" standard, the agency must "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made[,]" and the court must "review[] that explanation" and "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment" (internal quotation marks and citations omitted)). This means that it is effectively impossible to decide what Plaintiffs' complaint asks this Court to decide—whether or not State and DOD acted arbitrarily and capriciously in violation of the APA in evaluating the facts and deciding not to extract private American citizens from Yemen—without invading "a textually demonstrable constitutional commitment" to another branch (the first *Baker* factor). *El-Shifa*, 607 F.3d at 841 (internal quotation marks and citation omitted). Nor could this Court respond to the complaint's clarion call without making its own determination about the facts alleged in the complaint regarding the dangerous conditions in Yemen, and specifically, whether these facts, if true, warrant evacuation of the American citizens in that country—*i.e.*, "an initial policy determination of a kind [that is] clearly

for nonjudicial discretion" (the third *Baker* factor).  *Id.* (internal quotation marks and citation omitted).

The bottom line is this: while the mere fact that a case touches upon foreign relations does not render a claim nonjusticiable, the claims Plaintiffs bring in this case go far beyond a mere nexus with the foreign-policy realm.  Instead, the complaint's allegations make plain that Plaintiffs are seeking judicial review and intervention with respect to Defendants' decision not to evacuate American citizens from Yemen, and in so requesting, Plaintiffs are effectively asking this Court to decide whether the Executive Branch *should* have exercised its discretion to undertake a complex military operation in order to effect an evacuation in a foreign, war-torn country.  Evaluating Plaintiffs' claims would involve "call[ing] into question the prudence of the political branches in matters of foreign policy or national security constitutionally committed to their discretion[,]" *El-Shifa*, 607 F.3d at 842, and also could not be accomplished without this Court making and imposing policy judgments of its own about the wisdom and/or reasonableness of the agencies' determination that the requested evacuation should not proceed.  Therefore, on its face, Plaintiffs' complaint plainly raises a nonjusticiable political question.

**C.      Plaintiffs' Argument That Their Claims Are Justiciable Because State And DOD Have A Non-Discretionary Duty To Evacuate Endangered American Citizens Is Unavailing**

The foregoing analysis of the facial nonjusticiability of the complaint's arbitrary-and-capricious claims under the political-question doctrine would ordinarily be the end of this matter.  But Plaintiffs make a substantially different core contention about their APA claims in opposition to Defendants' motion to dismiss, and in order to explain the Court's application of the political-question doctrine fully, Plaintiffs' alternative

characterization needs to be addressed.  Specifically, in response to Defendants' well-supported assertion that the evacuation of American citizens from foreign lands involves discretionary determinations of the Executive Branch that cannot be second-guessed by the judiciary under the political-question doctrine (*see* Defs.' Mem. at 12–14), Plaintiffs insist that the agency conduct they seek is not a *discretionary* determination at all, but a mandatory, non-discretionary duty of the Executive Branch that is enshrined in a statute, an executive order, and an internal inter-departmental memorandum.  Plaintiffs say these three sources require State and DOD to conduct evacuations when American lives are "endangered" overseas (Pls.' Opp'n at 7), and therefore, "Defendants' inaction regarding Plaintiffs stranded in Yemen [is] actionable" under the APA.  (*Id.* at 4).[3]

The statute that Plaintiffs point to as a basis for their contention that State and DOD have no choice but to evacuate them (*see* Pl. Opp'n at 5) is subtitled "[o]verseas evacuations" and states:

> The Secretary of State shall develop and implement policies and programs to provide for the safe and efficient evacuation of United States Government personnel, dependents, and private United States citizens when their lives are endangered.  Such policies shall include measures to identify high risk areas where evacuation may be necessary and, where appropriate, providing staff to United States Government missions abroad to assist in those evacuations.

---

[3] Notably, Plaintiffs' complaint itself makes no mention of any statutory requirement or other source of the allegedly breached duty to evacuate them, and thus, in this Court's reading, the complaint fails to assert this legal theory, which amounts to a claim under 5 U.S.C. § 706(1).  *See Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 670 (D.C. Cir. 2016) (explaining that "§ 706(1) grants judicial review only if a federal agency has a ministerial or non-discretionary duty amounting to a specific, unequivocal command" (internal quotation marks and citation omitted)).  But the Court is willing to accept the proposition that Plaintiffs' complaint does, in fact, make a § 706(1) claim for present purposes, primarily because the bald text of that statutory provision is quoted (without elaboration) in the complaint (*see* Compl. ¶ 81 (stating that "Defendants unlawfully withheld and/or unreasonably delayed agency action to which the Plaintiffs are entitled")), and Defendants do not argue that Plaintiffs' opposition brief qualifies as an improper attempt to amend Plaintiffs' pleading.

22 U.S.C. § 4802(b).  Plaintiffs also rely on an executive order (*see* Pls.' Opp'n at 5)

that directs the Secretary of State to "carry out Department of State responsibilities in

the conduct of the foreign relations of the United States during national security

emergencies, under the direction of the President . . . , including, but not limited to . . . .

[p]rotection or evacuation of United States citizens and nationals abroad[,]" Exec.

Order No. 12656, 53 Fed. Reg. 47491, 47503–04 (Nov. 18, 1988), and directs further

that the Secretary of Defense shall "[a]dvise and assist the Secretary of State . . . as

appropriate, in planning for the protection, evacuation, and repatriation of United States

citizens in threatened areas overseas[.]"  *Id.* at 47498.  Additionally, Plaintiffs seize

upon an internal memorandum of agreement between State and DOD (*see* Pls.' Opp'n at

6), which states in relevant part that

> it is the policy of the United States Government . . . to: 1. Protect
> U.S. citizens and nationals and designated other persons, to include,
> when necessary and feasible, their evacuation to and welfare in
> relatively safe areas[;] 2. Reduce to a minimum the number of U.S.
> citizens and nationals and designated other persons subject to the
> risk of death and/or seizure as hostages[; and] 3. Reduce to a
> minimum the number of U.S. citizens and nationals and designated
> other persons in probable or actual combat areas so that combat
> effectiveness of U.S. and allied forces is not impaired.

(Mem. of Agreement, Ex. 3 to Defs.' Mot., ECF No. 8-4, at 2.)

Significantly for present purposes, Plaintiffs' belated insistence that the

Executive Branch has a non-discretionary duty to evacuate American citizens from

Yemen by virtue of these legal provisions is an obvious attempt to establish that their

APA claim presents a "purely legal issue[]" that a federal court is competent to decide,

*El Shifa*, 607 F.3d at 842 (internal quotation marks and citation omitted), because

showing the existence of such a duty under law would make it plain that evacuation is

"a *discrete* agency action that [Defendants are] *required to take*[,]" *Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 670 (D.C. Cir. 2016) (emphasis in original) (internal quotation marks and citation omitted) (examining 5 U.S.C. § 706(1)). After all, no less an authority than the Supreme Court has explained that Congress can create judicially administrable standards that purport to direct the Executive's actions in the foreign-policy realm; and, indeed, when Congress does so, the classic judicial role of deciding what those standards mean and whether they are constitutionally permissible—an exercise that is not susceptible to the political-question bar—is brought to the fore. *See Zivotofsky*, 132 S. Ct. at 1427 (explaining that "[t]he existence of a statutory right . . . is certainly relevant to the Judiciary's power to decide" a claim requesting judicial enforcement of that right, even when the statute relates to matters of foreign policy).

The facts of the Supreme Court's *Zivotofsky* case illustrate the point.  In that case, the Justices considered a federal statute that directed the Secretary of State to record the place of birth of Americans born in Jerusalem as "Israel" on their passports, upon request.  *See* 132 S. Ct. at 1424–25.  The Secretary declined to comply with the statute's directive, claiming that the statute contravened the Executive's longstanding policy of taking no position on Jerusalem's political status, and the D.C. Circuit held that the claims brought by the plaintiff, who sought the statute's enforcement, were nonjusticiable on political-question grounds.  *See id.* at 1424.  Despite precedents couching the power to recognize foreign sovereigns (and to implement such recognition) as one exclusively committed to the Executive, *see id.* at 1429, the Supreme Court reversed the Circuit's nonjusticiability holding, noting that Congress

had enacted a statute in the recognition realm that the plaintiff said established a non-discretionary duty for the Executive, *see id.* at 1426–27.  This meant that resolving the plaintiff's claims required no more than ascertaining whether his "interpretation of the statute [wa]s correct, and whether the statute [wa]s constitutional[,]"  which, according to the Supreme Court, was a "familiar judicial exercise" that did not involve the court in deciding a nonjusticiable political question.  *Id.* at 1427.  The *Zivotofsky* Court explained that, under these circumstances, "[t]he federal courts [were] not being asked to supplant a foreign policy decision of the political branches with the courts' own unmoored determination of what United States policy toward Jerusalem should be[,]" *id.*, and, in fact, because everyone agreed that the statute at least purported to authorize plaintiff to place Israel on his passport, all that was required of the lower courts (on remand) was the application of "familiar principles of constitutional interpretation" grounded in history and constitutional text to determine whether the statute violated the separation of powers.  *Id.* at 1430.

In the instant case, Plaintiffs argue that the statute, executive order, and memorandum of agreement they rely on collectively establish a non-discretionary duty on the part of the Executive to evacuate American citizens abroad when they "are at immediate risk of death or seizure as hostages in a combat zone" (Pls.' Opp'n at 8 (citation omitted)), and, similar to the arguments about the significance of the statutory right in *Zivotofsky*, Plaintiffs here maintain that these evacuation-related provisions render their APA claims judicially enforceable.  (*See id.* at 7 ("Once an evacuation is necessary or appropriate, . . . the Secretary of State does not have discretion to not implement [an] evacuation[.]"); *see also id.* ("[The provisions] contain clear and

19

unambiguous language that the Secretary of State '*shall*' provide for the safe and efficient evacuation of U.S. Citizens when their lives are endangered[.]" (emphasis in original)).)  This line of argument fails for several reasons—only one of which warrants substantial discussion here.  That is, even assuming *arguendo* that the provisions to which Plaintiffs point mandate the implementation of evacuation procedures under the circumstances prescribed,[4] it is clear to this Court that none of these provisions solves Plaintiffs' political-question problem, because none sets forth the kind of stark, obligatory action—*entirely* devoid of discretion—that was the subject of the *Zivotofsky* case, and Plaintiffs' breach-of-duty claim goes beyond requesting this Court's resolution of a debate about the meaning or constitutionality of the provisions at issue; rather, Plaintiffs seek judicial review of the agencies' conclusion that the prerequisites for evacuation that are allegedly prescribed by law have not been met.

To be specific, a careful examination of the provisions that Plaintiffs say create a non-discretionary duty to evacuate U.S. citizens reveals that these provisions are replete with *conditional* language, such as: evacuation "when necessary and feasible" (Mem. of Agreement at 2); "safe and efficient evacuation" when "lives are endangered[,]" 22 U.S.C. § 4802(b); and "evacuation . . . in threatened areas[,]" 53 Fed. Reg. at 47498. Thus, the duty Plaintiffs identify is clearly contingent upon the relevant agencies first exercising their discretion to make a determination regarding whether these prerequisites are satisfied, which means that the alleged duty is plainly *not* non-

---

[4] Defendants vigorously dispute this characterization.  (*See, e.g.*, Reply at 7 (arguing that the statute requires only that the Secretary of State develop certain evacuation-related policies; that the executive order at most directs Defendants to work together when planning evacuations; and that the memorandum only aids Defendants in setting forth their respective responsibilities *if* evacuation is necessary).)

discretionary.  Furthermore, if Plaintiffs' claims involved mere issues of interpretation and/or constitutionality with respect to these conditional provisions, then one might reasonably conclude that only mine-run, garden-variety, justiciable questions of law are being presented.  But the question that Plaintiffs' APA claim poses is not just what these provisions *mean*; it is also whether, if they mean what Plaintiffs say they mean, the Executive has violated the mandate that these provisions establish, and it is *that* aspect of the court's inquiry that would necessarily require the court to answer a non-justiciable political question.

To understand why this is so, consider the statute's purported pronouncement that the U.S. government should arrange for the evacuation of American citizens from "high risk areas where evacuation may be necessary" and should provide "safe and efficient evacuation" of U.S. citizens overseas "when their lives are endangered."  22 U.S.C. § 4802(b).  This requirement is substantially similar to the Executive Order's statement that evacuations may be executed when Americans are in "threatened areas overseas[,]" 53 Fed. Reg. at 47498, and also the Memorandum of Agreement's assertion that it is the policy of the United States to evacuate American citizens from foreign lands for their protection "when necessary and feasible" (Mem. of Agreement at 2).  Determining whether or not State or DOD has breached its alleged evacuation duties— as Plaintiffs' claims would require this Court to do—would necessarily involve sifting facts to determine (a) whether an overseas situation actually endangers American lives, (b) whether the complex military operations that might be required to accomplish an evacuation are necessary or appropriate, and (c) whether an evacuation can be executed safely and efficiently under the circumstances presented.  Each of these decisions (and

likely others not known to this Court) is a determination that is squarely within the political branches' bailiwick, because each would require the application of judgment and expertise to the facts on the ground as the Executive Branch understands them. *See Schneider*, 412 F.3d at 194 ("[D]ecision-making in the fields of foreign policy and national security is textually committed to the political branches of government."). Put another way, even if this Court accepts Plaintiffs' argument that these alleged sources of law create a duty to evacuate when evacuation is "necessary" and "appropriate" (*see* Pls.' Opp'n at 7), to address Plaintiffs claim, this Court would have to venture far beyond the familiar judicial task of interpreting the law and, instead, would have to make its own assessment of the applicability of the "necessary" and "appropriate" conditions to the Yemeni situation, despite what State and DOD have already decided in this regard. It is clear beyond cavil that this kind of second-guessing of the policy decisions of the political branches is precisely what the political-question doctrine forbids. *See El-Shifa*, 607 F.3d at 844 ("[C]ourts cannot reconsider the wisdom of discretionary foreign policy decisions." (citation omitted)); *see also Ali Jaber*, 2016 WL 706183, at *4–6 (holding that a claim that asked the court to declare that a "drone strike violated domestic and international law" was nonjusticiable because, to decide it, the court would have to determine the "imminence" of the threat addressed with the drone strike, "the feasibility of capture," and the "proportionality" of the strike (internal quotation marks and citations omitted)).[5]

---

[5] To the extent that Plaintiffs' opposition brief could be read to assert that State and DOD have *already* reached the conclusion that the conditions in Yemen satisfy the criteria prescribed in the cited sources, such that what is being requested is *not* an independent assessment of the facts but a court order that merely holds the government to its own prior representations (*see* Pls.' Opp'n at 13–14), this Court rejects this characterization of the claims presented for two reasons. First, the past agency actions that Plaintiffs reference in the complaint and opposition hardly constitute affirmative determinations on the part of the relevant agencies that the alleged factual predicates for mandatory evacuation exist, and this

It is also quite clear—for many of the same reasons—that there are no judicially discoverable or manageable standards for this Court to apply when considering the extent to which the agencies have breached the duty of evacuation that the statute, executive order, and memorandum purportedly establish. *See El-Shifa*, 607 F.3d at 841 (stating *Baker* factor two); *see also Nixon v. United States*, 506 U.S. 224, 228–29 (1993) (noting the partial conceptual overlap of *Baker* factors one and two). That is, in order to determine whether State and DOD have violated the non-discretionary duty that Plaintiffs say exists pursuant to these provisions, the Court would need a means of measuring the existence of the factual predicates that trigger the duty; yet, Plaintiffs offer no standards for making that call, and this Court has found none. For example, what makes an evacuation "necessary," as opposed to merely preferable or appropriate, such that Defendants can be deemed to have violated the law in failing to evacuate Americans in Yemen "when necessary"? And what standard would the Court apply to assess the feasibility of an evacuation operation for the purpose of determining whether State and DOD have breached their duty to evacuate Americans in Yemen "if feasible"? Plaintiffs suggest that the terms "shall" and "will" in the statute, executive order, and memorandum provide sufficient guidance (*see* Pls.' Opp'n at 14), but that is not so, because those terms do not establish *how* a court is to determine whether requirements

---

is especially so given that the agencies vehemently deny that the provisions at issue establish any mandatory duty to evacuate U.S. citizens at all, much less a duty that has been triggered by its own prior findings of fact regarding the conditions in Yemen. Second, Plaintiffs offer no support for their suggestion that the agencies can be bound for present purposes by the representations they may have previously made regarding facts on the ground in Yemen. Facts and situations evolve, as do judgments made respecting those facts and situations, and whether potential evacuees are in fact "endangered" such that evacuation becomes "necessary" is precisely the kind of determination that, even if once true, may not be so now. Thus, even assuming that the Executive Branch at some point previously concluded that evacuation of Americans in Yemen was necessary and appropriate, it is indisputably entitled to alter that evaluation in response to changing facts, and its current determination that conditions do not warrant evacuation is a discretionary foreign-policy decision that this Court cannot revisit.

23

such as "necessary" and "feasible" have been satisfied.   "[C]ourts are fundamentally

underequipped to . . . develop standards for matters not legal in nature[,]" *El-Shifa*, 607

F.3d at 844 (internal quotation marks and citation omitted), and, indeed, this Court is

not alone in its belief that the voyage upon which Plaintiffs have asked it to embark is

essentially rudderless: as Defendants point out, another district court has reached this

same conclusion in an indistinguishable case regarding these same provisions. *See Sadi*

*v. Obama*, No. 15-11314, 2015 WL 3605106, at *5–*7 (E.D. Mich. June 8, 2015).

   In the final analysis, then, this Court concludes that Plaintiffs' claims would

necessarily require the Court to "supplant a foreign policy decision of the political

branches with [this Court's] own unmoored determination" of whether the situation

calls for evacuation in a manner that renders Plaintiffs' claims nonjusticiable under the

political question doctrine. *Zivotofsky*, 132 S. Ct. at 1427.   This conclusion is strikingly

obvious, all things considered, and if any doubts remain, the D.C. Circuit's consistent

construction of 8 U.S.C. § 1189(a) should remove them.   That statute authorizes the

Secretary of State to designate an organization as a "foreign terrorist organization" if

(1) the organization is foreign, (2) the organization engages in terrorist activity or

terrorism (as statutorily defined) and (3) "the terrorist activity of the organization

threatens national security or U.S. nationals." *Ralls Corp. v. Comm. on Foreign Inv. in*

*U.S.*, 758 F.3d 296, 313 (D.C. Cir. 2014); *see also El-Shifa*, 607 F.3d at 843 (same

example).   The D.C. Circuit has held that the first two prongs of this statute are

justiciable, but not the third, because whether or not an organization actually threatens

the security of American nationals or the country as a whole rests on a "political

judgment[]" for which the "Judiciary has neither aptitude, facilities nor

responsibility[.]" *People's Mojahedin Org. v. U.S. Dep't of State*, 182 F.3d 17, 23 (D.C. Cir. 1999) (internal quotation marks and citation omitted); *see also Ralls Corp.*, 758 F.3d at 313 (noting that this example amply "illustrate[s] . . . the distinction between a justiciable legal challenge and a non-justiciable political question").

So it is here. Even if the statute, executive order, and memorandum require "safe and efficient" evacuation when "necessary or appropriate" or when American lives are "endangered" (Pls.' Opp'n at 7), the existence of any or all of these factual predicates is a foreign-policy judgment that is constitutionally committed to the political branches, not the judiciary. And with respect to the facts on the ground in Yemen, State and DOD apparently have determined that the evacuation of American citizens is not, in fact, necessary, feasible, or safe. Under the political-question doctrine, this Court lacks the power, and the tools, to say otherwise.

## IV.    CONCLUSION

As explained above, the "strategic choices directing the nation's foreign affairs are constitutionally committed to the political branches[,]" and once it becomes clear that a plaintiff wishes the courts to "reconsider the wisdom of discretionary foreign policy decisions[,]" the judicial inquiry must end. *El-Shifa*, 607 F.3d at 843–44; *see also Zivotofsky*, 132 S. Ct. at 1427. For this reason, and as reflected in its prior Order, the Court cannot consider Plaintiffs' claims or order the relief that Plaintiffs seek.


DATE:  May 17, 2016                    *Ketanji Brown Jackson*
                                       KETANJI BROWN JACKSON
                                       United States District Judge